UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
::
CAPTAIN GINA M. LONGO :
: MEMORANDUM AND ORDER
Plaintiff, :
: 12-cv-2413 (WFK) (LB)
-against- :
:
FLIGHTSAFETY INTERNATIONAL, INC., WARREN :
LINHAM, TRACEY CLOUGH, PAUL HEWETT, and :
KIM KNIGHT :
:
Defendants. :
:
------------------------------------------------------------------X

**WILLIAM F. KUNTZ II, United States District Judge**

Gina M. Longo ("Plaintiff") brings this action for damages and injunctive relief against her former employer, FlightSafety International, Inc. ("FlightSafety"), and individual employees of FlightSafety, Warren Linham ("Linham"), Tracey Clough ("Clough"), Paul Hewett ("Hewett"), and Kim Knight ("Knight"). Plaintiff brings claims based upon sexual harassment, hostile work environment, retaliation, and breach of contract. Defendants move to dismiss the complaint in its entirety pursuant to the doctrine of *forum non conveniens* and under other various theories arising under Rule 12(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this Court dismisses Plaintiff's action in its entirety based on the application and enforcement of the employment contract's forum-selection clause via the doctrine of *forum non conveniens*.

I.  BACKGROUND

Plaintiff alleges a lengthy set of facts, which the Court views in the light most favorable to Plaintiff for purposes of this motion. At all times relevant to the action Plaintiff was a resident of the United Kingdom and concurrently a citizen of the United States. (Dkt. No. 8, First Amended Complaint ("FAC"), ¶ 3 (Oct. 12, 2012)). FlightSafety International, Inc. ("FlightSafety") is a domestic corporation incorporated in the state of New York. (FAC ¶ 4.)

1

FlightSafety employed Linham, Clough, Hewett, and Knight in managerial positions. (FAC ¶¶ 5–8.) In her first amended complaint, Plaintiff states she "was offered a contract of employment," (FAC ¶ 11), which contained the terms and conditions of her employment. (FAC ¶ 10; Aff. of Tracey Clough ("Clough Aff."), Ex. A, B.) The employment contract included a forum-selection clause and a choice-of-law clause that reads: "The Conditions of Employment – UK shall be interpreted and enforced in accordance with the laws of the United Kingdom, and the parties submit to the exclusive jurisdiction of the English courts." (Clough Aff., Ex. B. at 1.)

Exhibit A to Clough's affidavit is a letter of appointment and is signed by Hewett, the Center Manager, and by Plaintiff, and dated February 11, 2008. (Clough Aff., Ex. A.) Exhibit B to Clough's affidavit is the Conditions of Employment, which was separately signed by Plaintiff on February 7, 2008. (Clough Aff., Ex. B.) The letter of appointment states that it "together with the enclosed 'Conditions of Employment Nov 07-UK' form your contract of employment. Additional items are enclosed as referenced in this letter." (Clough Aff., Ex. A.) The contract also contained an "Equal Opportunities" provision, which states in full part:

> It is the Company's policy to provide employment, compensation, training, promotions and other conditions of employment without regard to race, colour, ethnic origin, nationality, national origin, religion or belief, sex, sexual orientation, marital status and/or disability unrelated to an individual's ability to perform essential job functions. It is also the Company's policy to conform to all employment standards required by law. Full details of this policy are contained in the Appendices attached and also in the Employee handbook.

(Clough Aff., Ex. B. at 9.) FlightSafety employed Plaintiff as a ground and flight simulator instructor for a probationary period beginning on May 7, 2008. (FAC ¶ 10.) She remained in this position at FlightSafety's UK Training Centre in Farnborough, Hampshire until she was dismissed on November 13, 2009. (FAC ¶¶ 10, 14.)

Plaintiff alleges that shortly after beginning employment, Linham began making unwelcome comments to her, which spurred her to record the alleged incidents of sexual harassment in a journal. (FAC ¶ 22–24.) Plaintiff claims that Linham made repeated comments about Plaintiff's physical appearance and attempted at times to make unwelcomed physical contact, including instances where Linham attempted to kiss Plaintiff on the lips. (FAC ¶¶ 31, 34–39, 71, 76–77, 150–56.) On August 17, 2009 Plaintiff was informed by letter of a proposed reduction of instructors for the Hawker 400XP, the simulator for which Plaintiff was an instructor. (FAC ¶ 43.) Plaintiff finally reported one of the alleged incidents to Knight on September 18, 2009. (FAC ¶ 79.) Knight prepared a report of Plaintiff's accusation on September 21, 2009 and delivered it to Clough. (FAC ¶ 80.)

In a September 24, 2009 meeting with Clough and Hewett, Plaintiff inquired of the possibility of going part-time or transferring to another program to avoid redundancy, but was informed no such opportunities were available. (FAC ¶ 89.) Plaintiff believes she was denied these requests as retaliation for making an official complaint of sexual harassment. (FAC ¶ 90.) Plaintiff alleges that the employment action was retaliation because it was only 10 days after her complaint, on October 1, 2009, that she learned she was made redundant.[1] (FAC ¶¶ 50, 90.) Plaintiff accepted voluntary redundancy, but later claimed this acceptance was made under duress and based upon misrepresentations by FlightSafety as to the terms of her departure from the company. (FAC ¶¶ 115–16, 147.)

In the FAC, Plaintiff alleges causes of action for (1) discrimination and sexual harassment (without reference to any specific statute), (2) retaliation and hostile work

---

[1] However, paragraph 103 seems to contradict this point by stating: "In [an October 2, 2009] letter, plaintiff was informed that she was to be made redundant on January 1, 2010." (FAC at ¶ 103.)

environment (without reference to any specific statute), (3) breach of contract, and (4) discrimination and sexual harassment in violation of Section 296 of the New York State Executive Law. (FAC ¶¶ 157–64.) Plaintiff asserts jurisdiction is proper under 42 U.S.C. § 2000(e). (FAC ¶ 2). Plaintiff seeks compensatory damages, punitive damages, award of costs and attorneys fees, and Plaintiff's reinstatement to her former position as injunctive relief. (FAC ¶ 164(a)–(e).) Defendant now moves this Court to dismiss Plaintiff's action in its entirety through enforcement of the employment contract's forum-selection clause, applying the doctrine of *forum non conveniens*, and Rule 12(b).

## II. STANDARD OF REVIEW

District courts were previously faced with uncertainty in designating a single clause of Rule 12(b) as the appropriate procedural means for determining dismissal of a case based on a valid forum-selection clause. *See TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011). The Supreme Court has recently resolved this ambiguity. In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas, et al.*, 134 S.Ct. 568, 580 (2013), the Court held that generally "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," rather than Rule 12(b). But as the Second Circuit recognized, this clarification does nothing to "alter the materials on which a district court may rely in granting a motion to dismiss based on a forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014). Typically, the district court relies strictly on the pleadings and affidavits. *See Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987). The court is also empowered to order limited discovery if, in its discretion, discovery is necessary. *See Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451 n.3 (2d Cir. 1975).

The burden is on the plaintiff, who opted to bring the suit in a forum other than the one required by the forum-selection clause, "to make a 'strong showing' in order to overcome the presumption of enforceability." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997). In addition, there is generally a strong presumption in favor of upholding the enforceability of forum-selection clauses. *See LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 153 (E.D.N.Y. 2012) (Spatt, J.); *Bluefire Wireless, Inc. v. Cloud Mobile Commc'ns, Ltd.*, No. 09 Civ. 7268, 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) ("The Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring their use.") (citations omitted) (Baer, J.); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9–10 (1972); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993). Nonetheless, because the plaintiff risks losing its chosen forum by enforcement of the forum-selection clause, the plaintiff is "entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has had the opportunity to be heard." *New Moon*, 121 F.3d at 29.

## III. DISCUSSION

Defendants move this Court to dismiss the claims levied against them by Plaintiff because, they contend, the employment agreement binds Plaintiff to bring this action in the United Kingdom. Plaintiff insists the claims can and should be brought in this district. For the reasons to follow, this Court agrees with Defendants.

### A. *Applicable Law*

In order to prevail on a motion seeking enforcement of a forum-selection clause, the movant must demonstrate: "(1) the clause was reasonably communicated to the party resisting

5

enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009). If the movant satisfies these elements, the burden shifts to the party opposing enforcement to (4) rebut the presumption of enforceability by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007) (internal quotations omitted). "The Supreme Court has construed this exception narrowly." *Roby*, 996 F.2d at 1363.

The analysis becomes more intricate, however, when the forum-selection clause is contained within a contract also containing a choice-of-law clause. The interplay between the forum-selection clause rule as given above and foreign law designated as controlling by the contracting parties creates an undeniable tension. The Second Circuit has recently relaxed this tension and reconciled the competing interests between the parties' legitimate contract expectations on the one hand, and important federal policies on the other. In *Martinez v. Bloomberg LP*, the Court of Appeals distinguished "between the *interpretation* of a forum selection clause and the *enforceability* of the clause." 740 F.3d at 217 (emphasis in original). The court determined that parts two and three of the four-part rule noted above were quintessentially interpretive questions, and therefore the body of law specified in the choice-of-law clause should be applied as to each.[2] *Id.* at 217–18. However, part four of this test relates directly to enforcement of the forum-selection clause, and federal courts have an important

---

[2] *Martinez* did not address part one of the rule, which requires that the clause be reasonably communicated. Reasonable communication of the forum-selection clause was not challenged in *Martinez*, nor is it contested here. *Martinez*, 740 F.3d at 224.

interest in ensuring that enforcement of a forum-selection clause would be neither unjust nor invalid in the first instance due to such reasons as fraud or overreaching. *See id.*; *see also Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509–10 (2d Cir. 1998); *Bremen*, 407 U.S. at 17.

### B. *Analysis*

1. *Plaintiff's Claims Are Subject to the Forum-Selection Clause*

*Martinez* bears a striking factual similarity to this case. In *Martinez*, the plaintiff was an employee working in the United Kingdom and sued his employer for discrimination based on disability. *Martinez*, 740 F.3d at 215. In this case, Plaintiff also worked in the United Kingdom and is now suing Defendants for discrimination, here based on a sexual harassment claim. (FAC ¶¶ 157–60, 164.) The employment contract at issue in *Martinez* contained a forum-selection clause requiring disputes arising under the agreement to be litigated in English courts. *Martinez*, 740 F.3d at 215. The contract also contained a choice-of-law clause stating that the agreement would be interpreted and construed in accordance with English law. *Id.* Almost identically, the employment contract at issue here includes a forum-selection clause designating English courts for jurisdiction and a choice-of-law clause requiring that the terms of the agreement "shall be interpreted and enforced in accordance with the laws of the United Kingdom." (Clough Aff., Ex. B. at 1). In *Martinez*, the validity of the contract was not in dispute, and Plaintiff never contested that the forum-selection clause was reasonably communicated to him or that the clause was mandatory. *Martinez*, 740 F.3d at 224. Here, Plaintiff similarly provides no legal argument that the agreement was invalid and never contests satisfaction of these first two parts of the forum-

selection clause test.[3] It is part three of the rule—determining whether the claims and parties involved in the suit are subject to the forum-selection clause—that was the fulcrum of dispute in both *Martinez* and in this case.

The *Martinez* court made clear that determining whether claims and parties are subject to a forum-selection clause is an interpretive question where the designated body of law—there as well as here, English law—should guide analysis. *Id.* In facing facts mirroring those before this Court, the Second Circuit undertook a thorough examination of English law to answer the question of whether or not the discrimination claims there involved were subject to the forum-selection clause. *See id.* at 224–27. The court held that under English law the claims brought by the Plaintiff were indeed encompassed by the clause. *Id.* at 224.

The "*Fiona Trust*" case *(Fili Shipping Co. Ltd. v. Premium Nafta Prods. Ltd.*, [2007] UKHL 40) is the controlling English decision on the subject and stands for the proposition that "jurisdictional clauses" in international commercial contracts should be liberally construed in favor of the legitimate expectations of the contracting parties. *See Martinez*, 740 F.3d at 224. The House of Lords, the highest court of appeals for civil matters in the United Kingdom and now referred to as the U.K. Supreme Court, held courts should presume a jurisdictional clause encompasses all disputes arising out of the contractual relationship between parties "unless the language makes it clear that certain questions were intended to be excluded from the arbitrator's jurisdiction." *Fili Shipping*, [2007] UKHL 40; *see also Martinez*, 740 F.3d at 224–25. Although the clause at issue in *Fiona Trust* was an arbitration clause, "the decision refers broadly to the interpretation of 'jurisdiction clauses[]'" and "English courts have repeatedly applied the holding

---

[3] As will be discussed further below, Plaintiff does make some assertions relating to the existence of the contract that amount to no more than blatant factual error. These haphazard statements can in no manner be construed as an argument challenging contract formation.

8

in the *Fiona Trust* case to cases involving forum selection clauses." *Martinez*, 740 F.3d at 225 (citing *UBS AG v. HSH Nordbank AG* [2009] EWCA (Civ) 585 and *Skype Techs. SA v. Joltid Ltd.* [2009] EWHC 2783(Ch)).

The *Fiona Trust* principle of liberal construction applies to the forum-selection clause here, just as it did in *Martinez*. FlightSafety and Plaintiff agreed to be subject both to English law and to the jurisdiction of English courts in their employment contract. (Clough Aff., Ex. B at 1). Additionally, the dispute being litigated has arisen from the contract, as Plaintiff alleges sexual harassment in violation of the non-discrimination policies laid out in the agreement's "Equal Opportunities" provision. (Clough Aff., Ex. B. at 9.) Finally, there appears to be no language excluding sexual harassment claims from the province of the forum-selection clause. Therefore, application of English law demonstrates that Plaintiff's sexual harassment claims are subject to the forum-selection clause.

Because in *Martinez* the Second Circuit made the same conclusion on nearly identical facts, there is no reason—and Plaintiff offers none—to arrive at a contrary conclusion here. The only distinguishable factor in *Martinez* is that the discrimination claim there was based on disability, whereas here the discrimination claim is based on sexual harassment. *Martinez*, 740 F.3d at 215; (FAC ¶¶ 157–60, 164.) This makes no effective difference in the analysis, as claims arising out of gender discrimination are plainly incorporated in the "Equal Opportunities" section of the employment agreement. (Clough Aff., Ex. B. at 9.)

After mining Plaintiff's brief for any position opposing Defendant's forum-selection clause argument, or even addressing the forum-selection rule, the only points capable of extraction seem to relate obliquely to the rule's third element. At the outset of her *forum non conveniens* argument (rather than under any forum-selection clause discussion) Plaintiff states

9

that "[t]here is no mention of discrimination in the employment conditions." (Dk. No. 18, Plaintiff's Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition"), at 15 (Feb. 15, 2013)). This bare statement is unavailing, as the employment agreement included an "Equal Opportunities" section that expressly affirms the company's policy of non-discrimination. (Clough Aff., Ex. B. at 9.)

Plaintiff also attempts to distinguish the *Martinez* case by noting that "there was a clause in the [*Martinez*] agreement [stating] that 'any dispute arising hereunder shall be subject to the exclusive jurisdiction of the English Courts.' The clause in the instant employment conditions contains no such language concerning 'any dispute.'" (Plaintiff's Opposition at 16). Because "any dispute" was not specified in Plaintiff's forum-selection clause, so the argument seems to go, the discrimination claims at issue were not subject to that clause.

The forum-selection clause in the employment contract reads in full part: "[the agreement] shall be interpreted and enforced in accordance with the laws of the United Kingdom, and the parties submit to the exclusive jurisdiction of the English courts." (Clough Aff., Ex. B. at 1.) It is English law that must be looked to in order to determine the significance of any language included in or absent from the contract. *Martinez*, 740 F.3d at 224. Toward that end, in *Skype Technologies SA v. Joltid Ltd.*, the High Court of Justice (the trial court hearing the most important cases in the United Kingdom) rejected an argument attempting to distinguish between clauses covering "any claim" as opposed to "any dispute" in forum-selection and choice-of-law clauses. [2009] EWHC 2783(Ch), [3] (cited in *Martinez*, 740 F.3d at 225.) As the *Martinez* court explained, the High Court of Justice "found this argument was 'based on an unduly narrow reading of the clause' and represented 'exactly the kind of fine distinction ... deplored in *Fiona Trust*.'" *Martinez*, 740 F.3d at 225. Similarly, Plaintiff's

attempt to attribute meaning to the absence of "any dispute" in her employment contract is "unduly narrow" and represents an effort toward a fine distinction deplored in the governing English case law.

Plaintiff attempts a final parry against Defendants' forum-selection clause argument by challenging the application of English law as to the third element. She states that "the argument that the plaintiff [*sic*] discrimination claim must be interpreted under English law is quite incorrect, since this case, in this District Court, is brought under the laws of the United States and the Federal Court [*sic*]. The defendants cannot maintain that a Federal Discrimination [*sic*] claim must be governed by English law when it is brought under American law." (Plaintiff's Opposition at 16). This seems to be Plaintiff's choice-of-law refutation, in total, again characteristically unadorned by any legal citation or authority. As explained above, the Second Circuit has made clear that determining whether claims or parties are subject to a forum-selection clause must be interpreted under the body of law specified in the agreement's choice-of-law provision, here English law. *Martinez*, 740 F.3d at 224. Therefore, application of English law, as construed and interpreted in *Martinez*, demonstrates that Plaintiff's claims are subject to the forum-selection clause.

## 2. *Plaintiff Has Not Overcome the Presumption of Enforceability*

Because Defendants have satisfied the three elements required to enforce the forum-selection clause, the burden shifts to the party opposing enforcement to rebut the presumption of enforceability by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Phillips*, 494 F.3d at 383–84 (internal quotations omitted). Unlike the inquiry into the scope of the forum-selection clause, this rule of enforceability arises from and is interpreted by federal law. *See*

*Martinez*, 740 F.3d at 227. "Forum selection clauses play a crucial role in ensuring predictability in contract formation." *LaRoss Partners, LLC*, 874 F. Supp. 2d at 153; *In re Refco Inc., Secs. Litig.*, No. 08 Civ. 3086, 2009 WL 5548666, at *5 (S.D.N.Y. Nov. 16, 2009) ("Both the Supreme Court and the Second Circuit have recognized that forum selection clauses have economic value and should be enforced in accordance with the expectations of the parties.") (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991); *Bremen*, 407 U.S. at 13–15). As the Supreme Court has stated, "[i]n all but the most unusual cases… the 'interest of justice' is served by holding parties to their bargain" by enforcing forum-selection clauses. *Atl. Marine*, 134 S.ct. at 568.

While Plaintiff does seem to make some objection to the validity of the contract, she does not present a legitimate legal argument under either New York state common law or English law. In fact, Plaintiff effectively admits the existence of a contractual relationship between herself and FlightSafety in numerous ways. For instance, Plaintiff herself brings a breach of contract claim against Defendants—clearly implying the existence of a contractual relationship. (FAC ¶¶ 161–62.) Additionally, in her first amended complaint, Plaintiff admits she "was offered a contract of employment." (FAC ¶ 11.) Lastly, the *Martinez* court determined that under English law in order "to bring a claim for employment discrimination an employee … 'must establish that she was employed and was dismissed from that employment, so that to that extent reliance must be placed on the contract of employment.'" *Martinez*, 740 F.3d at 226 (quoting *Hall v. Woolston Hall Leisure Ltd.*, [2000] EWCA (Civ) 170, [42], [46]). In other words, English law requires a contractual relationship to exist as a precondition to bringing an employment discrimination claim at all. Therefore, by raising a discrimination claim Plaintiff must rely upon the existence of an employment contract.

12

Nonetheless, in Plaintiff's "Preliminary Statement" of her opposition to Defendants' motion to dismiss (rather than being placed under any argument heading) she makes the dubious claim that "[t]here is no mention [in the employment agreement] of a contractual relationship." (Plaintiff's Opposition at 6). Plaintiff adds that the employment contract is in actuality "not stated to be so." *Id.* Both of these claims cross the line from excusable mistake to either negligent reading of the basic evidence or willful misrepresentation to the court.

The second sentence of the employment agreement reads as follows: "This 'Letter of Appointment' together with the enclosed 'Conditions of Employment Nov 07-UK' *form your contract of employment*" (emphasis added) (Clough Aff., Ex. A.) The letter of appointment is signed by Hewett, the Center Manager, and Plaintiff, and is dated February 11, 2008. (Clough Aff., Ex. A.) The Conditions of Employment was separately signed by Plaintiff on February 7, 2008. (Clough Aff., Ex. B at 10.) Besides this latter signature, the Conditions of Employment addendum is unambiguously incorporated by reference and explicitly stated to constitute the Plaintiff's "contract of employment." (Clough Aff., Ex. A.) Unless Plaintiff challenges the authenticity of the Exhibit—which she did not—there is no justifiable reason for claiming that the document makes no mention of a contractual relationship. It quite obviously does.

In the end, Plaintiff makes no suggestion that enforcement of the forum-selection clause would be unreasonable or unjust, and neither does Plaintiff argue that the clause was legally invalid for any reason. If anything, she helps prove the existence of an employment contract by bringing a breach of contract claim herself and by raising discrimination claims conditioned on the existence of a contract. Therefore, because the forum-selection clause was reasonably communicated to Plaintiff, it is mandatory, the Plaintiff and her claims are subject to it as

interpreted under English law, and Plaintiff offers no rebuttal to enforcement, the forum-selection clause governs and requires Plaintiff to resolve her claims in the relevant English court.

## IV.   SANCTIONS

While the plaintiff counsel's flagrant factual errors unsubstantiated by the evidence, his repeated failure to cite legal authority to support his positions, and his persistent presentation of legal contentions to this Court largely unwarranted by existing law, all but compel sanctions, this Court will not impose them at this time. The Court notes, however, that in (1) claiming that "[t]here is no mention [in the employment agreement] of a contractual relationship," (Plaintiff's Opposition at 6); (2) stating that there was no mention of discrimination in the employment contract, (Plaintiff's Opposition at 15); and (3) nakedly asserting English law doesn't apply in this case simply because it was brought in federal court, without providing any legal support for this position or reference to any of the on-point and controlling authority frequently cited in Defendants' briefs, (Plaintiff's Opposition at 16), counsel for the Plaintiff skates on ice best characterized as razor thin.

## V. CONCLUSION

For the reasons discussed above, the Court GRANTS the Defendants' motion to dismiss on the basis of *forum non conveniens* (Dkt. No. 13), and therefore need not and does not reach Defendants' alternative theories. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of Court is instructed to enter judgment for Defendants and close the case.

**SO ORDERED**

Dated: Brooklyn, New York
March 5, 2014

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge